Arthur Markewioh, J.
Petitioner trustee, here submitting a final accounting under article 79 of the Civil Practice Act asks, in effect, for affirmance of the action of a committee designated in the trust instrument as administrator of certain aspects thereof; the trust instrument provided, insofar as it relates to the situation before the court, that, on the death of the last beneficiary, the settlor’s granddaughter, any principal left in the trustee’s hands be paid to her issue, if any, and that “ if there shall be no such issue * ® # such portion * * * shall be paid as the committee shall direct * * * to such i:= * * charitable corporation or corporations as the committee may select ” on the death of the settlor’s granddaughter without natural issue, the committee, taking the position that her four adopted children were not her “issue” within the meaning of the trust instrument, designated certain charitable institutions as recipients of the remainder of the trust corpus. So far as they are relevant to this interim disposition, answers and amended answers are found as follows: the committee’s designees to receive the remainder, Lincoln Center, Bennett College and Juilliard School, agree with the action taken by the committee and the trustee and join in petitioner’s prayer as respects distribution, at the same time setting up various affirmative objections, hereinafter referred to in more detail, to granting the adopted children the status of issue of the deceased last beneficiary; the Attorncy-G-encral takes the same position as the charitable designees, and adds a further reason, i.e., the provisions of section 115 of the Domestic Relations Law, why the committee’s designations should be approved; the testamentary guardian of the four children and their guardian ad litem both oppose the petition insofar as the charitable designees are concerned, insisting that the four adopted children are issue within the meaning of the trust instrument and, therefore, that they should take the balance of principal thereunder.
*337 Motions numbers 27 and 28 are brought on by the two guardians of the children; they seek to strike certain paragraphs of the various amended answers of the charities and of the Attorney-General as irrelevant and insufficient in law; motion number 29, brought on by the guardian ad litem alone, seeks to strike these allegations on the further ground that they are sham. The allegations under attack in these motions (Lincoln, Bennett, Juilliard: paragraph 5 of the answer of each; Attorney-General: paragraph First) may be briefly summarized: for the purposes of devolution of the principal of the trust, this court should not recognize the orders made in California and Nevada which effected adoption of the four children, first, because of the absence of jurisdiction in such courts by reason of lack of requisite residence or domicile of the adopting parent; second, because of alleged concealment from these courts by the adopting parent of certain relevant and material information bearing upon her fitness to be such; third, because of the alleged impropriety of the motives of the adopting parent, and her concealment thereof, which, it is said, were to defeat the charitable remainder in the trust. (Additional allegations, contained only in the Attorney-General’s amended answer, will be discussed separately.) It is the contention of the guardians that full faith and credit must be given by this court to the acts of the courts in California and Nevada and, therefore, that no allegation has any standing which seeks to inquire behind the orders of adoption made by the courts of our two sister States.
The court adopts the position taken by the guardians with respect to the allegations above summarized. The reasons therefor can be no better set forth than by incorporating herein by reference an expression on the identical subject by a court in another State. In aid of the position taken in the amended answer above referred to, on September 2, 1960, Lincoln procured orders in the Superior Court of Yuba County, California, permitting inspection and copying of adoption files in that State for evidentiary use in this proceeding. In a decision filed March 6, 1961, the California District Court of Appeal. Third District, reversed, reimposing cloture upon the files, and holding “ that it is futile to make anything in the files available for evidentiary use in New York, since the court there will afford full faith and credit to the adoption decrees”. Though, of course, the California court’s conclusion is not controlling, the reasoning leading to it is persuasive and is adopted by this court. All counsel have been furnished copies of the March 6 decision (Hubbard v. Superior Court [Lincoln Center], three cases, Cal. App. 189 A.C.A. 816 ; 11 Cal. Rptr. 700, 706), and it *338 need not be further excerpted here. The position taken by the California District Court of Appeal coincides with the settled law of New York (Matter of Johnson, 301 N. Y. 13,19-20).
Motions numbers 27 and 28 are granted to the extent of striking paragraph 5 in each of the amended answers of Lincoln, Bennett and Juilliard, and paragraph First of that of the Attorney-General, as irrelevant and insufficient. Motion number 29 to strike as sham need not, therefore, be reached, and it is dismissed as academic.
But this is not the end of the matter. It is held that the status of the adopted children has been granted to them by the States in which effected, and may not here be questioned; but the law of this State, it is not disputed, will control the distribution of the property held in this New York trust. Which leads to an examination of paragraphs Third through Sixth of the Attorney-General’s amended answer. These paragraphs plead that the settlor, who created the trust in 1917 when his granddaughter was 15, and who died in 1937, long before the adoptions, did not intend children adopted by his granddaughter after his death to take from the trust as her issue. Paragraph Sixth recites “ that the purpose of each and every one of the purported adoptions was to defeat the charitable remainder, in violation of section 115 of the Domestic Relations Law of this State.” Read literally, this language is regarded as irrelevant, for, in considering the applicability of section 115, the purpose or intention of the adopting parent is, in the court’s view, of no consequence ; it is the purpose or intention of the creator of the trust which is of importance. The rationale of the statute may well have been to prevent a fraudulent adoption from defeating a remainder, but no ease has come to the court’s attention in which an inquiry has been conducted into the intention of the adopting parent. Paragraph Sixth will, however, be read as though it pleaded the provisions of the fourth paragraph of section 115, for it is obvious from all the papers submitted herein by the Attorney-General and the statements made upon the argument that this is precisely what was intended. The fourth paragraph of section 115 reads as follows: “ As respects the passing and limitation over of real or personal property dependent under the provisions of an instrument on the foster parent dying without heirs, the foster child is not deemed the child of the foster parent so as to defeat the rights of remaindermen.” Although only the Attorney-General pleads the provisions of section 115, his appearance here is actually in behalf of all charities and his pleading inures to the benefit of all of them. Motions numbers 27 and 28 are denied as to the allegations *339 respecting section 115 of the Domestic Relations Law. The question before the court is, then, as to the intention of the settlor with respect to adopted great-grandchildren and this maybe ascertained from the trust instrument only Avhen examined against the background of the surrounding circumstances. The fourth paragraph of section 115 is not a flat prohibition against an adopted child taking against a remainderman; the controlling factor is still, where it can be found, the settlor’s intent (Matter of Leask, 197 N. Y. 193 ; Ann. 27 L. R. A. [N. S.] 1158 ; Matter of Upjohn, 304 N. Y. 366 ; Matter of Charles, 200 Misc. 452, affd. 279 App. Div. 741, affd. 304 N. Y. 776 ; Matter of Ward, 14 Misc 2d 903, mod. 9 A D 2d 950, affd. 9 N Y 2d 722). Proper disposition, therefore, of the underlying article 79 proceeding requires examination into the settlor’s intent, for which purpose a Referee will be designated by the court. Let an appropriate order be settled hereon for such designation which shall provide that, pending the coming in of the report and proceedings to be taken therein, disposition of the underlying proceeding avíII be held in abeyance.
This interim disposition has made no reference to the claims advanced by two other previously adopted children of the settlor’s granddaughter, uoav adults, whose adoption Avas purportedly later vacated, inasmuch as consideration of their situation would not be timely until examination into the settlor’s intent has been completed.